the fourth district appellate court of the state of Illinois has reconvened. The Honorable John W. Turner presiding. Thank you. Good afternoon. We're here for our second case this afternoon and our last case 4-2-3-0-1-1-0 People versus Overton. Appearing for the appellate is Mr. David T. Harris and appearing for the appellee is Luke McNeil. Mr. Harris, are you ready to do so? Thank you. Good afternoon, Your Honors. Counsel, may it please the court. We've raised two issues in the briefs of this second stage post-conviction appeal. One, that my client made a substantial showing of a Brady violation regarding pictures of the co-defendant's arm, and second, that his second stage appointed counsel provided unreasonable assistance. I'd like to address both of those, time permitting, today. First, Mr. Overton made a substantial showing of a Brady violation, alleging that the state withheld photographs of the co-defendant Smith's arm, and the scratch on his arm, which would have corroborated his testimony that he scratched Smith while trying to stop the murder, and corroborated his testimony that he told the police about this, and also rebutted or picketed the prosecutor's mockery of his trial testimony about this. He made the records that showing that this evidence was favorable, its absence prejudiced him, and it was suppressed by the state. This court's prior decision provides some guidance here, even though it was at a different stage of post-conviction proceedings, the leave to file stage, rather than the current stage. This court already said that corroboration of his testimony about the scratch in the photographs is favorable evidence. Nothing about the second stage standard changes the fact that this evidence benefits him, and in the prior appeal, this court found the mere redacted report about taking a picture favorable. Here we have the pictures themselves. Counsel, I have a question for you. Yes. There's a lot in this record, so I just want to make sure that my understanding is correct, particularly as it refers to the state's presentation of the police report. Is my understanding correct that the state made a motion to dismiss, to which it had attached this so-called unredacted police report at the trial level? Yes. Yes, at the second stage. Okay. Now, is my understanding fairly correct that there's some reference to a police report and some sort of police report previously in the record, but that the material attached to the state's motion to dismiss was not in the record, that particular document and its attachments. Is that correct? Is it fair to state or defense counsel of the trial court that the hearing on the appropriateness of the trial courts, considering this, for lack of a better way to put it, newly submitted evidence in support of the state's motion to dismiss? You know, I don't think that came up in the arguments from defense counsel. The state attached it, and defense counsel, you know, I don't recall defense counsel addressing that in the arguments. Juan Peel, you're arguing, if I understand correctly, that the additional evidence in support of the state's motion to dismiss at that stage. Is that correct? Yes, that is correct. It's a dismissal stage where the state, by moving to dismiss, accepts the allegations of the non-moving party. And here, the state tried to have it both ways, where they moved to dismiss, which should, by law, accept the allegations, and yet also tried to raise a factual dispute by presenting new evidence at the second stage. Okay. Now, I as well, when it's his opportunity, because I want to make sure I understand what everyone's respective positions are at this point. So, you may continue, Mr. Harris. Yes, and to continue on that point, even if the court would allow new evidence outside the record to raise a factual dispute at a dismissal stage, this only, the state's argument only is that this report was tendered and made the pictures available, but not that the pictures themselves were tendered, which is Overton's claim. And Overton's claim in his pleadings is that he talked to this attorney about it, and they asked the state for the pictures, and the state said, we don't have any. And that's actually borne out. In response to Justice Steinman's questions, you, I think, indicated that you have argued in your brief that the state used an unredacted police report, which was not in the record. Where is that in your brief? I didn't see that. In the reply, the state, in the section about how relief is not foreclosed by the state's arguments below, where that would be argument one, D, is it? Yes, arguing that the state attached this exhibit, it's improper for the second stage, and even if it was tendered, it doesn't rebut the allegation that the photographs were tendered. Okay, just so I can look at that, you said that is in your initial brief. Where did you say? Opening brief, argument one, D, page 23 through 25, responds to this, the claim the state made below that they provided this new evidence with the number 41 on it, that must mean the report was tendered, and responded to that piece of discovery. Okay, thank you. I'll take a look at that. So the evidence was favorable, as this court already discussed in its prior decision. The absence of this evidence prejudiced Overton. As this court correctly recognized in the last appeal, proof of the scratch and proof that pictures existed, disposes of the notion raised by the state both at trial and in this appeal that his testimony was outlandish. This court noted that this corroboration would have significantly bolstered his credibility. At trial, the state told the jury the case all boiled down to one issue, credibility, specifically the credibility of Overton's testimony versus the detective's. There's a reasonable probability of a different outcome had Overton's credibility been, as this court said, significantly bolstered, and had the prosecutor not been able to mock him about these supposed pictures and about his claim that he told the police about the scratch. The police would have had to answer for this. Why didn't make it into a statement that he told them about a scratch when, on the day he claims he told them during the recorded interview, Detective Young directed an officer to take a picture of the scratch on Smith's arm? Lastly, Overton made a substantial showing that the evidence was suppressed by the state. Just like the leave to file stage, at this second stage, all well-pled facts must be accepted as true unless positively rebutted by the record, and nothing in the record positively rebuts his allegation that the state did not turn over the pictures. The record even makes it seem quite likely his attorney didn't introduce them after Overton was mocked for suggesting that he scratched Smith and there were pictures of these, and it appears the prosecutor wasn't even aware, based on the way the prosecutor questioned Overton about this. To be clear, a Brady violation doesn't require purposeful malfeasance by the prosecutor. If the police sat on the evidence and the prosecutor didn't know about it, that still would be a Brady violation. And the history of the saga of these pictures paints a striking picture. He wasn't given them before trial. At trial, he was mocked for suggesting that there was a discussion about these. At the leave to file stage, he finally, through FOIA, gets a redacted police report saying, on the date of his recorded interview, Detective Young had an officer take the picture of a scratch on the right arm of a redacted name, unknown. And the state, at that point, said that's too vague to suggest these pictures exist. They argued that below and in this prior appeal in this court. Finally, this court sent it back for second stage proceedings, where his attorney got the unredacted report, showed it was Clarence Smith's arm that was photographed, got the pictures, and now what does the state do? They said, oh, we actually gave that to you a long time ago before trial. So did they pretend at trial that these pictures didn't exist? Did they feign ignorance at the leave to file stage below and in the filings in this very court that the pictures existed when they argued that there wasn't enough evidence to suggest any pictures existed at all? No, it seems much more likely that they simply didn't know they existed because the police had them and the prosecutor's office never looked for them. If we were to agree with you and reverse and remand for third stage hearings, at that third stage would be the defendant's burden to establish that a Brady violation occurred? Yes. Yes. Okay, go ahead. Yeah, all along, Mr. Overton has been right. All along, he's been mocked and discredited about this, but he has been right. Now he is asking for that evidentiary hearing to finally prove up this claim. While we're asking for an evidentiary hearing on the Brady claim, we also request further second stage proceedings because Mr. Overton was not provided reasonable assistance of counsel at second stage below. Counsel made a number of errors, belying a lack of knowledge of the law and abandoned the chamber's claim that this court advanced to the second stage in the prior appeal. This court is steadfastly protected post-conviction litigants rights to the reasonable assistance of counsel in recent decisions like Nowlin and Brown cited in the briefs. And again, just last month in People versus Wheeler, which I believe your honor, Justice Stegman authored. Counsel in this case made similar errors as in those cases. Counsel added claims based on an allegation that Kerry Cook recanted her trial testimony, but did not substantiate that recantation with an affidavit from her, just like an error in Nowlin and Wheeler, which were claims of ineffective assistance for not calling an alibi witness, and there was no affidavit from the alibi witness. That's the same as a recent Supreme Court decision Urzua discussed in Wheeler. An appointed counsel here even made the same mistaken argument as in an affidavit. Counsel below responded that they'll do better and they'll subpoena Kerry Cook at the evidentiary hearing. This was the same argument counsel mistakenly made in Wheeler and Urzua, which the Supreme Court plainly stated counsel's argument was wrong. Counsel also failed to amend the petition to argue ineffective assistance of prior counsels to avoid forfeiture, like in Brown in this court's decision and in the Supreme Court decision in Addison. Counsel added plainly frivolous claim of apprendee supposedly applying retroactively, even though that's been settled for well over a decade, similar to frivolous claims added in Brown, and counsel abandoned the strong chamber's claim about co-defendant Smith's confession to Kerry Cook, which was sent back for second stage proceedings, and that's similar to the decision in the Supreme Court in Addison, where they found that counsel made the petition worse by removing claims. So for this host of mistakes, we asked this court to send it back for further second stage proceedings so Mr. Overton can enjoy his statutory right to the reasonable assistance of counsel to properly shape his claims with specific directions that the Brady claim advanced to the third stage. If there are no questions, I would... You're asking us to send it back for second stage proceedings? Yes, second stage proceedings because his counsel provided unreasonable assistance and some of these claims could be shaped into proper legal arguments and the chamber's claim should not have been abandoned. Well, given all the time and effort everyone's already put in, why don't we, if we agree with you, why don't we send it back to the third stage? Well, I think there... I would ask for specific directions that the Brady claim does go to a third stage, but he should have a second chance at the second stage because his attorney did not properly shape his claims and abandoned the chamber's claim. I don't understand that when you say he should have a second chance at the second stage. His sole posture to second stage is, I want to get to the third stage. So if we're saying, okay, take your position in the third stage and trial judge should conduct a third stage hearing, it's like you're talking about we're depriving him of something. What does that mean? I think that would deprive him of a chance to have his chamber's claim heard at the third stage, unless this court also sends that to the third stage. No, I mean to hear the whole petition at the third stage. It's my understanding that specific claims, not the entire petition, advance to the third stage and if this court were to remand for third stage on the Brady claim only, he would not be able to re-litigate his chamber's claim because that was abandoned at the second stage. If this court crafts an order that allows him to raise that at the third stage, we would, of course, appreciate that. But otherwise, I think there needs to be further second stage proceedings. How about if we send it to the third stage and let the trial court figure out what it's going to hear? If this court crafts a specific order allowing him to re-litigate chambers at the third stage, yes, my fear would be that the court would not allow that without specific orders from this court and we'd be back on a cycle having a mixed review the third stage. The first I recollection about the chamber's claim, what happened with that? Trial counsel was about to ask Kerry Cook as she testified about co-defendant Smith confessing to her that he was the only one who stabbed the decedent and my client didn't participate and the court did not allow it. And that was a claim that this court included in its decision last time remanding for second stage proceedings. That claim was advanced to the second stage. The argument is that this under chambers and under Illinois rules of evidence now, adopting chambers, that this was a statement against his penal interest. That's a hearsay exception and it should have been allowed. And it would, you know, in this credibility case where as the state argued it turned on credibility, this would bolster Mr. Overton's claim that he didn't participate. And when it went back down to second stage, counsel filed an amended petition that included some of the pro se claims in the petition, but omitted this one, which was sent back for second stage. So I do not want Mr. Overton to be foreclosed pursuing this further. And that's why I'm asking for further second stage. So counsel, if I understand it, your desire then if the matter is remanded, that your client would have the opportunity to amend his petition to include that claim and perhaps others. And your fear is that if we send it back only for a third stage, that opportunity will not be permitted to him. Yes, that is my fear. But the second, the Brady claim was fully litigated at the second stage. So I think that needs to have specific orders that that advance that is entitled an evidentiary hearing. But whether it's the second or third stage, there should be some basis for him to be able to relitigate the chambers claim that was abandoned in any other, anything else that may have failed to do. And that's part of the problem. When we have a clear demonstration of unreasonable assistance, we don't know how these claims could have been shaped or whether he properly ascertained the client's claims. So that's why there should be this chance for proper representation at the second stage, as well as the third stage hearing, at least on the Brady claim. Well, if a petition to reverse and remand it goes back to the trial court on the initial petition and the claims defendant raised, wasn't it all of them? Uh, we raised, are you asking him about what it was sent back for on the last appeal? No, I figured we'd do it now. I'm not sure, but the Justice Leonard's question is a good one. I would think, uh, I believe if a dismissal at the second stage is overruled, case is reversed and remanded for third stage proceedings, it seems to me everything was in the petition is now for the trial court and the judge has said to the defendant, call your witnesses. Let's hear it all right now. Well, if your order is clear and says that then that would be appreciated. Um, but again, the chamber's claim was not in the amended petition. So I don't know if that would advance and he wouldn't have a chance to pursue that. So he needs the reasonable assistance of counsel to make sure that that, that does not get abandoned. It was in the original petition, but not the amended petition. Yes. Yes. It was in his original. Yeah. He, it was in his process, excessive petition count. This court found sufficient merit for it to advance to the second stage. And at the second stage appointed counsel filed an amended petition that left that claim out. Okay. So that's one of counsel's many errors below, um, that are right in line with the decisions in Brown and now Lynn and Wheeler Supreme court decisions in Arizona and Addison. And so that's why he should have renewed second stage proceedings, but because the Brady claim was fully litigated at second stage, um, and properly presented, uh, it's right for this court to send that for an evidentiary hearing. Thank you. Thank you. If there are no questions, um, I would reserve any time remaining for rebuttal. You will have rebuttal. Mr. McNeil, please proceed with your argument. May it please the court counsel, uh, your honor Stegman. I'm guessing you are focusing on the, uh, attached redacted police report and whether that was proper as to the Brady argument. Um, I did some frantic searching while, uh, counsel was talking to see if I could find anything. I can't find any authority that, that holds, uh, attachments to a motion to dismiss are per se improper. Um, well, but let me ask it this way. The first question, by the way, uh, I want to make sure that, uh, as you heard my question to Mr. Harris, did you agree with his answer? This, um, uh, material was attached to, uh, the state's motion to dismiss and, uh, was that otherwise independently present in the record prior to that? Is that correct? Uh, I guess the report was in there, but it wasn't redacted. Um, no, it wasn't the same, whatever may have been in the record, wasn't the same thing as attached to the state's motion to dismiss. Would that be correct? I would agree with that. So here, I suppose, uh, the fundamental takeaway issue at the second stage, can the state submit material or information, evidence, whatever you want to call it, not otherwise contained in the record in support of its motion to dismiss and ask the court to consider it at the second stage? Uh, like I said, I looked for some authority to argue that. Of course, this would be forfeited since this issue really wasn't brought up, uh, at the, at the second stage. Um, defendant pretty much treated this as accepted and just attacked the, um, material itself. Uh, I would argue that affidavits and, and whatever else are able to be attached to a defendant's amended petition. I, I would say that something like this, that is directly related to a defendant's claim is, should not be per se improper to, uh, attach to a motion to dismiss. Well, the, here's the problem though. The, uh, this calls for essentially an evidentiary finding by the trial court as to what happened. When was this presented? Was it presented? In what form? What did the state do? When did the defendant have it, if at all? These are all factual determinations, which seem to me to be, uh, the kinds of findings the trial court should make at the third stage and can't, literally cannot make it a second stage. It's not permitted to make factual findings at a second stage. Isn't that correct? Um, as long as they can make factual findings based on the record. I misspoke. Can't make factual findings except based upon what the record before the court contains, as opposed to new evidence of whatever kind. Wouldn't that be correct? That is correct. Uh, I would submit that looking over the order in this case, I don't think the trial court made any specific factual findings concerning this unredacted police report. I think that the trial court made the correct decision that this evidence, whether provided or not by the state is, was completely immaterial. So that is the third prong of the Brady analysis. And that is the easiest one to defeat here. This was completely immaterial evidence. There's absolutely no chance that... The court, uh, had this material before it. Its focus was on the Brady issue and, uh, in its resolution. Uh, wouldn't we have to conclude in accordance with your argument that the court paid no attention to this new material at all? Well, they, the, the order it wrote out was pretty bare bones, but, um, it stated that the Brady issue fails. Um, it can, it fails in this case primarily because of the immateriality of this evidence. It was completely speculative and Coleman, the U.S. or the Illinois Supreme Court case cited in my brief states speculation by a defendant that he might've been able to use the information in question does not establish materiality under Brady. Um, to establish materiality, an accused has to show the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Here to undermine confidence in the verdict, we have to ignore the mountain of evidence actually presented at trial that was properly before the trial court to look at in this record that showed defendant's guilt. We, defendant confessed to this murder through a Detective Young. This, uh, was a highly detailed confession signed by defendant after being read to him. There were multiple states witness that corroborated facts in this confession. Uh, Cook stated she saw defendant beating the victim, saw defendant and Smith get out of the, get something out of the trunk, disappeared down the alley, then heard defendant and Smith talking about how hard it was to kill the victim when they came back. Doctor testified there were wounds on the victim of different sizes, consistent with two different kinds of weapons being used to stab him. Obviously, the only reasonable inference to make from that is that two people participated. Davidson corroborated that defendant did get something out of the toolbox in the trunk of the car and returned from the alley with the shirt off, which was in his confession that he wrapped the screwdriver in his shirt. Um, meanwhile, defendant, the only thing, uh, going against the state's evidence was defendants claim, which, uh, in his testimony, he does claim that he tried to stop Smith and that told police this. And there was a big conspiracy to edit it out of both his written statement and the audio statement. Bear in mind, this was in 1990. In other words, these police officers for, there's nothing to suggest they had anything against defendant or were related to Smith. Somehow had to convincingly take this audio, put it into context while, uh, somehow editing out that defendant was saying the complete opposite of what he was actually saying in the interview. Um, it was completely absurd. The jury heard this and as fact finder presumably rejected defendants testimony instantly as unbelievable. So there's overwhelming evidence. And then the so-called exonerating evidence was a picture of a minor scratch on Smith's arm. And I say instruct us that at the first and second stages, we have to accept as true the material defendant submits in support of his post-conviction petition and less rebutted by the record. That is true. Well, you see, that's where we are then. Um, the record may rebut this, uh, if this evidence is properly submitted at a third stage, the trial court can consider it. And of course, as Mr. Harris appropriately conceded that the third stage, it would be the defendant's burden to prove that a Brady violation occurred. We wouldn't be talking about if, what, or the like. We'd have an experienced trial court who could hear and see the witnesses and any documentation, and then make the courts which is, you know, what the Supreme Court and Robinson seems to suggest we ought to be doing. I agree with you, your honor, except when the record contradicts the claim. I mean, if we're going to ignore the materiality requirement of Brady, then, uh, I mean, where, what's the point of the second, second stage here? Uh, the trial court had every right to look and determine that all three of these prongs of Brady, of the Brady analysis were met here. That was not improper for the trial court to, to determine, to determine that the overwhelming evidence, the outcome of the proceedings would not have changed at all had this picture, even if it was not disclosed to defendant, had it been disclosed. Even if the defendant had been convicted, would it perhaps have mattered if the trial court at sentencing thought there was some legitimacy of any kind to his claim that he tried to, uh, uh, stop the, uh, stabbing from occurring, attempt to stop Smith from stabbing Madcock. And, uh, one of the things you might look to, uh, Brady deals with possibly mitigating punishment. And in this case, the defendant received 90 years while Smith received only 60. Uh, the trial court heard that evidence and gave it any credence at all at sentencing. It might not have affected, uh, the court's assessment of a 30 year differential sentence between the two. If there was a chance that this actually undermined confidence in the verdict. Uh, what about sentencing? I mean, is Brady also deals with mitigation? Does it not? Yes, but I mean, the third problem of, of Brady is materiality. And that might be material. I suppose that's my question. Might it not be material to a trial court's consideration, if it gave any credence at all to the defendant's claim, attempted to stop Smith from stabbing Madcock, uh, that maybe, uh, the court wouldn't have given him as heavy a sentence. It does not. I would submit that it does not lend any credence at all. Other otherwise defendant would not have been, uh, convicted in this case because either he was trying to stop them or he was stabbing him himself. The defendant argue that, uh, uh, under Brady, it might've been mitigating as far as sentence, as far as the sentence imposed. No, not at this, not in the post conviction of the amendment petition. Let me follow up. But you started your argument by saying when justice Steinman originally asked the question, uh, to Mr. Harris about the redacted, unredacted police report that you did not, uh, proceed the defendant to have argued in his brief that the court had made a decision based upon a matter outside of the record or evidence outside of the record. Am I right? More importantly, they did not argue that in the, at the second stage proceedings below. Well, did they argue it in the brief? In the reply brief, it was argued. Okay. Okay. I guess I missed that too. I missed it in the opening brief and I did not see it in the reply brief. I know that there was an argument about, uh, about the report, but I don't remember reading that, uh, it was considered by the court inappropriately because it was outside of the record, but I stand corrected. Please proceed. I suppose I could argue as OSAD almost always does that rule three 41 H considered that forfeited since it wasn't in the opening brief, but, uh, I'll leave that to this court to decide. Um, again, materiality here is completely, uh, completely inadequate. There's no, this picture corroborated nothing. Uh, defendant's claim was outlandish and it's outlandish. Even if we have this picture where I had to squint to even see where the scratch was on Smith's arm. Um, of course we can, we can play the hypothetical game that of course the state's going to talk about, well, couldn't this scratch have come from anywhere? Weren't you two repeatedly and violently stabbing a guy in close quarters with a bicycle near him? Uh, could you have not gotten scratched during this violent murder? Uh, of course these would just open up more questions than answers for defendants. So my, my, my leg, my final leg to stand on is that this is not material evidence. This does not undermine the confidence in the verdict. Uh, defendant's story was as absurd, whether this picture was introduced or not. And, uh, the trial court and fact finder easily rejected defendant's story, which again undermines his own confession, undermines the medical evidence, undermines witnesses who saw and observed things consistent with defendant's confession to police. Uh, defendant's story was simply absurd and this was not material evidence that would undermine confidence in the verdict that was there. Um, moving on to the reasonable assistance of counsel argument. One thing that has to be pointed out, unlike Suarez, uh, a rule 651C certificate was filed in this case. And unless it counts for nothing, that 651C certificate presumes counsel complied with Supreme Court rules 651C. That's important in this argument because it should be presumed that post-conviction counsel pursued this chamber's argument and determined it was meritless, which was correct. Cook couldn't have testified to this hearsay statement, uh, that Smith, uh, from Smith, which was at her boyfriend, which was defendant's trial, uh, the trial, in fact, she tried to, the trial court granted, uh, an objection, sustained an objection that this was hearsay. The only way Cook could have properly testified to this is if there were sufficient indicia of trustworthiness. Here, there was no suggestion this was trustworthy at all. Like I said, it's clear that Cook was defendant's boyfriend. She, of course, had a motivation to lie then. There would have been no opportunity to cross-examine Smith. The record establishes he was planning on not testifying. Um, the statement was not corroborated by any other evidence. And in fact, as already, uh, discussed, there were pretty clearly two assailants that killed the victim. So Smith doing it by himself would be contradictory to the medical evidence. Uh, and also Smith had already implicated defendant as the, as the murderer to police. Nothing suggests Cook was a close acquaintance of Smith. She was defendant's boyfriend, but it seems like the only time she was in Smith's presence was with defendant. Uh, we could, we could call Smith and defendant close acquaintances. Uh, that's an argument that could be made possibly. Uh, it doesn't follow that Cook was a close acquaintance of Smith, which is required. Uh, so all three of the main factors that you analyze for indicia of trustworthiness fail here. And, uh, the Chamber's claim was meritless. Uh, I want to talk about meritless issues. I would say completely frivolous issues can be the basis for a successful unreasonable assistance of post-conviction counsel claim, uh, regardless of prejudice. Luckily in this case, like I already said, we have a properly filed rule 651 certificate, but it is absurd to hold the unreasonable assistance of counsel based on a completely frivolous and meritless claim not being pursued can be, uh, grounds for remand. Um, as discussed in my brief, reasonable assistance is supposed to be a lower threshold than Strickland. Strickland of course, uh, requires prejudice. It's literally impossible for a defendant to be prejudiced by post-conviction counsel, not pursuing a frivolous and meritless issue or by, uh, pursuing an additional frivolous issue, which defendant also claims here, uh, any authority upholding otherwise not only makes zero sense, but it will result in clogging up trial court dockets with second and third stage post-conviction proceedings that have zero chance of success ultimately. And this leads to absurd results. And, um, I think prejudice and harmless have to be part of the unreasonable assistance of post-conviction counsel analysis, uh, for both common sense and judicial efficiency, but I'll get off of my soapbox on that issue. If there are no other questions, I would ask this court to affirm. I have a question. In your brief, you argued timeliness, uh, that was not mentioned by Mr. Harris. You'd not mentioned it yet. Are you, have you abandoned that argument? I'm not abandoning it. Uh, this was a, the state mentioned it, uh, raised it in the, um, proceedings below and the trial court held that it was, uh, untimely. I would say, I mean, I did argue in the, the prior appeal in this case that cause there was no cause for this. This could have been raised a lot earlier, but it wasn't the only argument made at below was that it didn't exist in 1990, which it of course did. But, um, it, it, I would agree with, uh, counsel that timeliness wants a successive post-conviction petition is, uh, accepted then, uh, timeliness issue is probably moved at that point. Okay. Um, I don't see any other questions. Thank you, Mr. Harris. Do you have any rebuttal? Yes, thank you. And I'll just take them in reverse order, starting with the second issue, because that was what was recently discussed, um, regarding there being a 651 C certificate in this case, and that's setting it apart. Counsel is overlooking the Supreme court's decision in people versus Addison, which came out after the opening brief in this case, and it was cited in the reply, which rejected that very argument. The state there tried to distinguish whether you look for prejudice in the underlying claims when there's a, uh, claim of unreasonable assistance. Uh, the state argued those other cases are different because there was no 651 C certificate. And in Addison, there was the Supreme court rejected that out of hand and this court can't do anything but follow that. So regardless of the 651 C certificate, the merit of the underlying claim, it doesn't matter. And that makes sense because, uh, can't, we don't know how and what, what issues and how they could have been properly presented had Overton obtained the right to reasonable assistance of counsel. He didn't have that here. Um, but again, this court's bound by Addison. Uh, counsel also mentioned regarding the chamber's claim that Carrie Cook's telling of Smith's confession wouldn't be believed because she was supposedly Overton's boyfriend. There was no evidence in this trial that she was his boyfriend. The evidence in this trial was that Overton was dating a woman named Denise Coates, who was Carrie Cook's sister. Now back to the Brady issue. Um, you know, I referred to the opening brief and the reply brief also page five gets more specific about not being able to introduce evidence outside the record. Uh, but it's, it's plain black letter law. When a party moves to dismiss, they accept the truth of the allegations. They're not raising a factual dispute. They're arguing that there's no sufficiency even if the claims are to be believed. Uh, so here the state improperly raised a legal dispute with new evidence outside the record while also supposedly accepting the allegations as true for a motion to dismiss. That's not just black letter law and motions to dismiss in all cases. It's also clear post conviction law that the claims are believed in less rebutted by the record as the Supreme Court has repeatedly said, and it's cited in Coleman in the reply brief on page five. Uh, that's the standard except the claims unless rebutted by the record, not rebutted by evidence outside the record that state ads. But even if you consider this document, the state added, what does the number 41 on the bottom mean? The state interprets that as meaning this must have been page 41 of a packet of discovery that was turned over, but that is factually unclear. That would need to be addressed at an evidentiary hearing where the state can try to prove what 41 means. All we have is the unredacted report and in the corner there's the number 41. Uh, there's nothing to establish that this means it was tendered in discovery. And further, even if it was tendered in discovery, it does not rebut the claim that the picture was not provided when requested. The, so this, this document, no matter how you interpret it, whether you reject it out of hand because it was improperly raised as a factual dispute at the time. Um, and then even if, if you fault counsel below for not arguing that this document shouldn't have been added, that's just another one of counsel's errors. The top of the myriad discussed in the briefs and discussed earlier. Um, counsel then argued that the Brady evidence was immaterial, wholly immaterial would not matter. Well, this court's decision in the prior appeal rejects that because if the evidence was completely immaterial, there would have been no finding of cause and prejudice. It was material because it would have created a reasonable probability of a different outcome. A reasonable probability is less than a preponderance. And at this stage, there only needs to be not even a full showing of that, a substantial showing of a less than a preponderance chance of a different outcome. And there was, because the evidence showed that Smith was covered head to toe with blood. My client only had blood on his shoes. Davidson, Rita Davidson told the police that Smith said a gangster has got to do what a gangster has got to do. Counsel kept talking about the medical evidence while all, all the stab wounds were within a couple inches of each other within a two or three inch radius, which lends credence to the notion that only one person conducted this stabbing. Counsel talked about how, again, it's outlandish that this evidence, the interview didn't record everything he told the police, but if he didn't tell the police about the scratch, why on that very day of the recording at recording the recorded statement, did Detective Young direct an officer to go take a picture of a scratch on Smith's arm? So it's clear this, there's a lot of support to show this was discussed. His testimony wasn't outlandish. The evidence supports his position that he tried to stop this. The new picture supports that further. This case, this court already recognized this case was a credibility contest. That's what the state said it boiled down to. They told the jury the only thing they have to decide is credibility. And the credibility of the statement, the credibility of my client's testimony. And this court found that this, this, um, would significantly corroborate his testimony. So I'd ask for remand for second stage proceedings to enjoy the right to counsel and third stage hearing on the Brady claim at the minimum. Thank you. The court thanks both of you for your arguments. The case is submitted and the court now stands in recess until further call.